## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JEFFERY B. HICKS,                    )
                                     )
            Petitioner,              )
                                     )        CV 04-CO-0300-S
                                     )
WARDEN MARTHA L. JORDAN,             )
                                     )
            Respondent.              )

## MEMORANDUM OPINION

Before the court is the petitioner's petition for a writ of habeas corpus, submitted pursuant to 28 U.S.C. § 2241, wherein he asserts that his federal criminal sentence has been improperly calculated by the Bureau of Prisons. For the reasons stated herein, the court finds that the petition is due to be denied.

## BACKGROUND

The petitioner entered a plea of guilty to the offenses of armed robbery and kidnaping in Albany, Dougherty County, Georgia Superior Court, in Case Number 92-R-1354 on May 14, 1993 ("Dougherty County Case"). (Ex. 4; Ex. 5 at ¶ 13 & Ex. 6 at ¶ 10).[1] He was sentenced on the armed robbery charge to 20 years, with eight years to be served in custody and the remainder on probation. He was sentenced on the kidnaping charge to 10 years, with five years to be served in custody concurrent with the other charge and the remainder on probation. (*Id.*).

On November 28, 1993, the petitioner escaped from state custody. (Ex. 5 at ¶ 43; Ex. 6 at ¶ 11). While on escape status, the petitioner burglarized a residence and stole several items. (Ex. 5 at ¶ 43; Ex. 6 at ¶¶ 11-14). He was arrested by local authorities and a revolver and

_____

[1]The exhibits are located at document 5 unless noted elsewhere.

ammunition were found in his possession.  (Ex. 6 at ¶¶ 15-17).

On January 10, 1994, the petitioner was placed in federal custody via a *writ of habeas corpus ad prosequendum* by the United States Marshals Service ("USMS") to answer charges in the United States District Court for the Middle District of Georgia in the case of *United States v. Jeffrey Bernard Hicks*, CR-93-27-ALB-AMER (DF).  (Ex. 7).  On January 25, 1994, he entered a guilty plea to a charge that he possessed a firearm after being convicted of a felony.  (Ex. 5 at ¶ 1).  The conviction was related to the petitioner's underlying conduct that resulted in the Dougherty County conviction mentioned above.  (Ex. 5 at ¶¶ 1-13, 39).  He was sentenced on April 4, 1994, to a term of imprisonment of 100 months to run concurrently with the Dougherty County case.  (Ex. 2).

The Regional Inmate Systems Office ("RISO") for the Bureau of Prisons ("BOP") in Atlanta, Georgia, calculated the petitioner's sentence so that it could run concurrent with his state sentence.  (Ex. 8 at ¶ 11).  To implement the district court's order that the federal sentence run concurrent, the BOP did a *nunc pro tunc* designation, naming the Georgia Department Corrections as the place for the petitioner to serve his federal sentence.  (*Id.*).  The BOP calculated the commencement of the federal sentence on the date of its imposition, April 4, 1994, resulting in the petitioner having an anticipated release date of September 21, 2000.  (Ex. 9).

On August 31, 1994, the petitioner was sentenced in Chattooga County, Georgia, Superior Court, for the offenses of escape, burglary, theft by taking, and a second theft by taking in case number 94 CR 13545 ("Chattooga County Case") (Ex. 2 at ¶ 12; Ex. 4; Ex. 6 at ¶ 42).  He was sentenced to five years imprisonment on the escape; 20 years imprisonment on the burglary count (nine to serve with the balance on probation); 20 years imprisonment (nine to serve

with the balance on probation) on the first theft charge; and, 10 years (nine to serve with the balance on probation) on the second theft charge.  (Ex. 2 at ¶ 12; Ex. 4; Ex. 6 at ¶ 42).  The state court ordered that the sentences were to run concurrent with each other.  (Ex. 2 at ¶ 12; Ex. 4).

On March 15, 1996, the petitioner was taken into USMS custody via a *writ of habeas corpus ad prosequendum* to answer charges in the United States District Court, Northern District of Georgia, in the case of *United States v. Jeffrey Bernard Hicks*, No. 4:96-CR-04-010-HLM. The federal charges were the result of the petitioner's underlying conduct involved in the Chattooga[2] County Case.  (Ex. 6 at ¶ 42).  After the petitioner's pleas of guilty, he was sentenced on October 9, 1996, on two counts of possessing a firearm after being convicted of a felony.  (Ex. 3).  Specifically, he was sentenced to 120 months imprisonment on the first count and 10 months imprisonment on the second count.  The sentences were to run consecutive, for a total of 130 months custody.  (Ex. 3 at p. 2).  The court further ordered the term of imprisonment to run consecutively to the federal sentence imposed in the first federal case and also ordered the sentence to run consecutively to the Dougherty County Case and recommended that it run concurrently with the Chattooga County Case.  (*Id.*).

On November 14, 1996, the RISO for the BOP re-computed the petitioner' sentence. (Ex. 1; Ex. 8 at ¶ 14).  The petitioner received an aggregate 230 month federal term of incarceration because the 130 month sentence in the second federal case was ordered to run consecutive to the 100 month sentence in the first federal case.  (Ex. 8 at ¶ 14).  The BOP further aggregated the two federal sentences so that the commencement date would be April 4, 1994.

---

[2] Chattooga County is also referenced as Chatooga County in the record.

(*Id.*).  This resulted in a new anticipated release date of March 1, 2010, for the petitioner.  (*Id.*).[3]

The BOP prepared a second *nunc pro tunc* letter that was sent to the USMS following imposition of the second federal sentence.  (Ex. 8 at ¶ 16; Ex. 11).  According to the respondent, the intent of this letter was to notify the USMS of the new release date for the aggregate sentence.  (Ex. 8 at ¶ 16).  The respondent notes that the sentence commencement date in the October 9, 1996 letter was erroneous because the sentence in the second case was ordered to run consecutive to the sentence in the first federal case.  (*Id.*).  This, however, did not change the petitioner's anticipated release date.

On September 10, 1997, the BOP responded to a request from the petitioner to be transferred from state to federal custody.  (Ex. 12).  The petitioner was advised that he was serving two federal consecutive sentences for a total custodial term of 230 months with a projected release date of March 1, 2010.  (*Id.*).  The petitioner was also informed that since he was in state custody, a designation to a federal facility would not occur until his release from state custody.  (*Id.*).

On July 15, 2003, the petitioner was paroled from the state sentences and transferred to BOP custody.  (Ex. 13).

On November 8, 2003, BOP received a letter from the petitioner requesting *nunc pro tunc* designation and additional credit towards the federal sentence for time spent in state custody.

---

[3] The respondent notes that the petitioner also received 289 days pre-sentence jail credit toward his aggregate federal sentence from July 29, 1992, to May 13, 1993 (one day prior to imposition of the state sentence), because the federal sentence is longer than the state sentences.  (Ex. 8 at ¶ 15).  This pre-sentence credit was awarded pursuant to BOP Program Statement 5880.28, Sentence Computation Manual CCCA-1984, (PS 5880.28), pp. 1 - 21 to 1 - 22.  (Ex. 10).  "PS 5880.28 provides that 'prior custody credits shall be given for any time spent in non-federal pre-sentence custody that begins on or after the date of the federal offense up to the date the first sentence begins to run, federal or non-federal.  These time credits are known as Willis time credits.'"  (*Id.* at 1 - 22; *see also Willis v. United States*, 438 F.2d 923 (5th Cir. 1971)).

4

(Ex. 14).  The BOP responded that the petitioner's federal term of imprisonment could not begin earlier than the date of imposition of his sentence by the federal court in the first case.  (Ex. 15 at p. 1).  As the petitioner was serving a state sentence from May 14, 1993, to April 14, 1994, the *nunc pro tunc* designation could not be granted prior to April 4, 1994, when the first federal sentence was imposed.  (Ex. 15).

On November 25, 2003, the BOP received a second letter from the petitioner requesting *nunc pro tunc* designation.  (Ex. 16).  The BOP responded on December 29, 2003, advising the petitioner that, although the federal sentences were ordered to run concurrent with one of the state sentences, the two federal sentences were ordered to run consecutively with each other. (Ex. 17).  The petitioner was told that the BOP had no authority to change or modify the judgment and commitment order in a federal case.  (*Id.*).

The petitioner has not sought relief through available BOP Administrative Remedies. (Ex. 18).

The petitioner filed the present petition pursuant to 28 U.S.C. § 2241, claiming that "[t]he judge ordered that the federal term will run concurrent with the already imposed state sentence but that the Bureau of Prisons has failed to so do."  (Doc. 1 at p. 4).  The petitioner also claims that he is entitled to *nunc pro tunc* designation.  As part of his contentions, the petitioner further claims that the BOP should run his "1996 federal sentence concurrent with the 1994 state sentence, as per the federal judge's order."  (Doc. 11 at p. 7).

The petitioner is presently incarcerated at the Federal Correctional Institution in Talladega, Alabama ("FCI Talladega").  He is serving the aggregate sentence of 230 months

incarceration.  The petitioner's expected release date remains March 1, 2010, via good conduct time release.  (Ex. 1).

The court has required the respondent to appear and show cause why the requested relief should not be granted.  The respondent has appeared and asserts that the petition is due to be dismissed because the petitioner has not exhausted his administrative remedies and because the claims are without merit.  (Doc. 5).

## DISCUSSION

### Failure to Exhaust

The respondent initially asserts that the petitioner did not properly avail himself to available administrative remedies prior to bringing the case at bar.  (Doc 5, citing Ex. 18 and Attachment A).  The petitioner responds that it would be futile for him to further pursue his administrative remedies.  (Doc. 11 at pp. 5-7).

The respondent is correct in the assertion that it is well established in the Eleventh Circuit, that an inmate must exhaust his administrative remedies before seeking individual relief in a § 2241 petition. *Skinner v. Wiley*, 355 F.3d 1293, 1294 (11th Cir.) ("We agree with the reasoning of our sister circuits and hold that prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements."), *cert. denied*, ___U.S. ___, 124 S. Ct. 2112, 158 L. Ed. 2d 722 (2004); *United States v. Mitchell*, 845 F.2d 951, 952-53 (11th Cir. 1988) (federal district court lacks jurisdiction over federal prisoner's petition for jail time credit when prisoner had not exhausted his administrative remedies with the Attorney General).  The Eleventh Circuit has further held that a prisoner must exhaust his

administrative remedies prior to filing a § 2241 petition even if his release date has past. *Gonzalez v. United States*, 959 F.2d 211 (11th Cir. 1992).  Unless the inmate petitioner exhausts his administrative remedies, the court is without jurisdiction to hear the claim.  *United States v. Herrera*, 931 F.2d 761, 764 (11th Cir. 1991), *cert. denied*, 503 U.S. 972, 112 S. Ct. 1588, 118 L. Ed. 2d 306 (1992).

The BOP's Administrative Remedy Program is enumerated in 28 C.F.R. § 542.10, *et seq*. The three-tiered review begins with the inmate filing a form that describes his complaint as well as his requested remedy.  The formal Administrative Remedy Request (BP-9) is filed with the Warden where the inmate is confined.  28 C.F.R. § 542.14(c)(1)&(4).  The Warden then responds to the inmate's formal complaint.  If dissatisfied with the Warden's response, the inmate is required to submit an appeal on the appropriate form (BP-11) to the appropriate Regional Director.  28 C.F.R. § 542.15 (a).  If dissatisfied with the response of the Regional Director, the inmate is required to submit an appeal on the appropriate form (BP-11) to the General Counsel, 28 C.F.R. § 542.15(a).  Appeal to the General Counsel is the final administrative appeal under the BOP's Administrative Remedy Program.  28 C.F.R. § 542.15(a).

Although the record is clear that the petitioner has presented his challenges to the Regional Inmate Systems Administrator, he did not avail himself to the administrative review provided for by the BOP.  This court cannot ignore the fact that exhaustion of administrative remedies is a jurisdictional requirement.  The petitioner has not presented his claims through the administrative process.  The petition is therefore due to be dismissed at this juncture.

The petitioner's argument that John A. Gaither, the Regional Inmate Systems

Administrator, informed him in a letter dated November 19, 2003, that "[o]nly the court can make this adjustment (for time spent serving another related sentence) to the sentence" does not change the fact that the petitioner should be required to exhaust his administrative remedies.  (Ex. 15 at p. 2).

<strong>The Petitioner's Substantive Claim</strong>

Even if the petitioner had exhausted his administrative remedies prior to bringing this action, he is not entitled to any substantive relief.  Program Statement 5880.28, <u>Sentence Computation Manual, CCCA of 1984</u> (PS 5880.28) (Ex. 10), incorporates the statutory directives of 18 U.S.C. §§ 3584, 3585, concerning the term of imprisonment when multiple sentences of incarceration are involved, and provides guidelines on sentencing matters for the BOP.  Section 3585(a) provides, "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).  The respondent asserts that the BOP "interprets this to mean a federal sentence of imprisonment cannot commence earlier than the date on which it was imposed."  (Doc. 5 at p. 12 (citing Ex. 10 at p. 1 - 13)).  Additionally, the respondent states that the BOP guidelines for *nunc pro tunc* sentencing are explained in Program Statement 5160.05, <u>Designation of State Institution for Service of Federal Sentence</u>, which provides that *nunc pro tunc* sentencing occurs when there is both a state and federal sentence and the BOP designates a state facility as the place to serve the federal sentence.  (Doc. 11 at 12 (citing Ex. 19)).  This, according to the respondent, allows a federal sentence to commence on the date of imposition, instead of the date the inmate is received

8

into federal custody, resulting in a concurrent federal and state sentence.  Such designations are implemented by the BOP upon the order or recommendation of a federal sentencing court.  Additionally, as noted by the respondent, the BOP will also consider a request for *nunc pro tunc* designation from an inmate or state authority when the intent of the federal sentencing court is unclear.  The BOP will not allow a concurrent designation if the federal sentencing court requires that multiple federal sentences run consecutively.  Thus, a consecutive federal sentence will take precedence over a concurrent federal and state sentence.

In the present case, the petitioner's federal sentences had to be calculated by the BOP to run consecutively because of the sentencing judge's order in the second federal case.  United States District Judge Harold L. Murphy specifically ordered that the second federal sentence had to run consecutively to the first federal sentence.  (Doc. 11, Ex. A (Sentencing Tr.) at p. 9).  Additionally, each federal sentence in the petitioner's situation commenced on the respective date of imposition, regardless of whether they are ordered to run concurrently or consecutively.  (BOP Program Statement 5880.28 at 1 - 13).  To find otherwise would not make sense.

As already noted, Program Statement 5160.05 provides guidance on *nunc pro tunc* designations.  *Nunc pro tunc* designation allows the federal sentence to run concurrent with a state sentence.  Without the designation, a federal sentence would not begin to run until the prisoner completes the state sentence and is transferred to federal custody in accordance with 18 U.S.C. § 3585(a).  *Nunc pro tunc* designation to a state facility, however, does not change the date of imposition of the federal sentence.  It still commences on the date it is imposed by the federal court.

Section 3585(a) establishes that a sentence commences on "the date the defendant is received in custody . . . [at] the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).  In situations involving multiple sentences, § 3584 provides that ". . . if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively. . . .  Multiple terms of imprisonment run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a).

Under the circumstances, the BOP correctly calculated the petitioner's sentence.  He was afforded the credits he was due.  Even assuming for the sake of argument, that the sentence in the second federal case was ordered to run concurrent with the sentences imposed in the first federal case and both state cases, the time for service of that sentence would still not commence on the date of imposition of any of the earlier state or federal sentencing dates.  The sentence would commence on the date of imposition, that is, October 9, 1996.  *See United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980); quoting *Wilson v. Henderson*, 468 F.2d 582, 584 (5th Cir. 1972).[4] *See also Shelvy v. Whitfield*, 718 F.2d 441, 444 (D.C. Cir. 1983) ("[p]recedent in point confirms that a federal sentence made concurrent with a sentence already being served does not operate in a 'fully concurrent' manner.  Rather, the second sentence runs together with the remainder of the one then being served.  In other words, when a sentence is ordered to be concurrent with a pre-existing sentence, it only means the inmate does not have to fully complete the pre-existing sentence before starting to serve time on the newly imposed sentence.").  As noted, by the

---

[4] Decisions of the former Fifth Circuit decided by September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

10

respondent, "[t]his means [that] when a prisoner is serving two or more sentences which run concurrently, the sentence which results in the longer period of incarceration yet remaining shall be considered the term to which such prisoner is sentenced for purpose of computing the release date." (Doc. 5 at p. 16).  The Chattooga County case, which Judge Murphy recommended run concurrently with his sentence, was absorbed into the aggregate federal sentence because the federal sentence is longer.  Since the federal sentence is longer, the petitioner will not spend any additional time in prison.  (Ex. 8 at ¶ 14).  The petitioner has failed to demonstrate otherwise.

To the extent the respondent asserts that the petitioner is claiming that his pre-sentence jail credit was not correctly credited, the petitioner states that he is not challenging the 289 days credit he received.  (Doc. 11 at p. 9).  Even if he were challenging this aspect of his sentence calculation, there does not appear to be any error.  The petitioner received 289 days pre-sentence jail credit toward his aggregate federal sentence for the period from July 29, 1992, to May 13, 1993 (one day prior to imposition of the Dougherty County Case), because the federal sentence is longer than the state sentence.  The petitioner has received the full benefit of this credit.  (Ex. 8 at ¶ 15).

## CONCLUSION

Premised on the foregoing, the petitioner's petition for a writ of habeas corpus is due to be denied and dismissed with prejudice.  An appropriate order will be entered.

Done this 28th day of April 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153